1                                          HONORABLE RONALD B. LEIGHTON

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HERIBERTO PAGAN FLORES, | CASE NO. C14-1001 RBL |
| Plaintiff, | ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, | |
| Defendant. | |

THIS MATTER is before the Court on Defendant MetLife's Motion for Summary Judgment [Dkt. #18].

## I. SUMMARY

Plaintiff Heriberto Flores owned a single-story, 1,029 square foot house in Tacoma that he insured with Defendant MetLife. Flores' house was severely damaged by a fire that started in a neighbor's home on March 20, 2013. The house was uninhabitable after the fire and Flores lost many personal possessions. MetLife insurance adjuster James Lawson prepared a cost estimate for the damage to the home. The insurance policy allowed Flores to select a cash value settlement or a replacement cost settlement. Flores opted for the more generous replacement cost

1   settlement of $154,165 to repair the home. MetLife paid this amount to Guild Mortgage

2   Company, Flores' mortgage lender.

3       The insurance policy also covered additional living expenses (ALE) for rental housing

4   during the rebuild. MetLife initially paid for a hotel room and then for a furnished rental house

5   while Flores awaited repairs. MetLife paid out $26,689 in ALE to Flores in the twelve months

6   after the fire, but ceased ALE payments after a year.

7       Flores hired Carlos Galvan of Galvan Construction to rebuild his home. Flores asserts

8   that unbeknownst to him, Galvan submitted plans to build a much larger, two-story, 2,000 square

9   foot home on the property. Galvan took advance payments of approximately $48,000[1] from

10  Flores through Guild Mortgage, but aside from some demolition of the fire-damaged structure,

11  Galvan did not complete any additional work on the rebuild. The parties agree that Galvan stole

12  approximately $42,000 of repair funds.[2]

13      Flores fired Galvan on November 20, 2013, and subsequently hired HiLine Homes to

14  build a new two-story, 1,768 square foot house, for $121,685. HiLine completed the home in

15  October 2014, but due to Galvan's alleged theft, Flores had insufficient funds to pay HiLine. In

16  July 2015, HiLine sued Flores in Pierce County Superior Court for $48,000.

17      Flores filed this lawsuit in King County Superior Court, asserting claims for breach of

18  contract, bad faith, and violation of the Washington Consumer Protection Act (CPA). Flores

19  argues that MetLife failed to fully compensate him for the damage to his home and for ALE

20  incurred while he awaited repairs. Flores contends that MetLife is responsible for covering the

21

22  _____

23      [1] Flores claims Galvan was paid $48,000, while MetLife describes a $42,000 payment.
    The difference is not material in the context of this motion.

24      [2] Carlos Galvan denied any wrongdoing during a contempt hearing in September 2015.
    [Dkt. #29].

1   actual cost of repair including the cost overages resulting from Galvan's alleged theft. Flores

2   seeks compensatory, special, general, and punitive damages.

3       MetLife removed the case, invoking this Court's diversity jurisdiction. [Dkt. #1]. MetLife

4   now seeks summary judgment on all three claims. MetLife argues that it fully compensated

5   Flores for the fire damage, that its policy does not cover Galvan's misdeeds or the construction

6   of a substantially larger house, and that Flores failed to timely sue under the policy. MetLife also

7   argues that Flores' bad faith claim fails as a matter of law because he cannot demonstrate that

8   MetLife acted unreasonably. Finally, MetLife asserts the CPA claim fails because Flores cannot

9   establish a deceptive practice, injury, or causation.

10   **II. DISCUSSION**

11   **A.     Summary Judgment Standard.**

12       Summary judgment is appropriate when, viewing the facts in the light most favorable to

13   the non-moving party, there is no genuine issue of material fact that would preclude summary

14   judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to

15   summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to

16   interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for

17   trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of

18   evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v.*

19   *Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not

20   affect the outcome of the suit are irrelevant to the consideration of a motion for summary

21   judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary

22   judgment should be granted where the nonmoving party fails to offer evidence from which a

23   reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 3

**B.  MetLife did not breach the insurance contract.**

Flores alleges that MetLife breached the insurance contract by not paying the full cost necessary to replace his home and by prematurely cutting off ALE payments. MetLife argues that it compensated Flores for the full replacement value of the home and that its ALE payments were consistent with the insurance policy.

1.  <u>MetLife is not liable for the cost overages resulting from Galvan's theft.</u>

Under the policy, if the amount of the loss is eighty percent or more of the full replacement cost, then MetLife "will pay the full cost of repair or replacement." [Dkt #30 at 82]. The policy requires that the damaged structures be replaced with "materials of a like kind and quality." *Id*. Flores contends this language obligates MetLife to pay for the *actual* cost of rebuilding the home, and that MetLife must pay the outstanding balance to HiLine.

MetLife argues that no reading of the policy requires it to pay overages resulting from Galvan's theft of its first payment, or for a new, larger home.

"[I]n Washington the expectations of the insured cannot override the plain language of the contract." *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wash. 2d 165, 172, 110 P.3d 733 (2005) (en banc). MetLife paid Flores $154,165—a number the parties agreed was the full cost of repair or replacement for the home. Flores' argument that MetLife is liable for cost overages resulting from Galvan's misdeeds is baseless. MetLife did not breach the insurance policy as a matter of law. Its Motion for Summary Judgment on Flores' breach of contract claim is GRANTED and that claim is DISMISSED with prejudice.

2. <u>MetLife is not liable for additional ALE payments.</u>

Flores claims he was entitled to additional ALE payments.  He claims the policy required ALE payments until the repairs were complete, some seventeen months after the fire. Flores also argues that MetLife only paid $26,689 in ALE even though the policy's limit was $37,325.

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT - 4

1    The policy's ALE provision pays for increases in the insured's living expenses necessary

2    to maintain the insured's normal standard of living, but the payments are not indefinite.  They are

3    limited to "the shortest time to either repair or replace the residence premises…." [Dkt. #30 at

4    71].

5    MetLife argues that the repairs to the home that was damaged (not the new, larger home)

6    could have been completed in seven months, and that it paid twelve months of ALE. Flores seeks

7    ALE payments for the actual time it took to build the new home. But that argument has been

8    rejected.  Courts in this district and others have declined to interpret similar ALE clauses to mean

9    that the "shortest time required" to repair in fact means "the actual time required to repair." *See*

10   *Garoutte v. Am. Family Mut.*, 2013 WL 3819923, at *3 (W.D. Wash. 2013); *See also Christmas*

11   *v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 435, 444 (E.D.N.C. 2014).

12   Under Flores' interpretation of the ALE clause, MetLife is required to make ALE

13   payments indefinitely up to the limit of the policy. But this is not what the plain language of the

14   policy states. While the delays in the project were not Flores' or MetLife's fault, the

15   unambiguous terms of the contract do not require MetLife to make ALE payments based on the

16   *actual* time of repair or to the policy's limit. MetLife accommodated the delays by paying a

17   year's worth of ALE, despite the fact that seven months should have been sufficient to

18   accomplish the rebuild. MetLife's ALE payments to Flores were reasonable and did not breach

19   the insurance policy. Accordingly, MetLife's Motion for Summary Judgment on Flores' ALE

20   breach of contract claim is GRANTED and that claim is DISMISSED with prejudice.

21   **C.  MetLife did not act in bad faith as a matter of law.**

22   Flores asserts MetLife acted in bad faith by refusing his requests to communicate with

23   Spanish-speaking MetLife employees. MetLife claims that Spanish-speaking claims

24   representatives are readily available.

1   An insurer breaches its duty of good faith if its actions are unreasonable, frivolous, or

2   unfounded. *See Mut. of Enumclaw Ins. Co. v. Dan Paulson Const., Inc.,* 161 Wash. 2d 903, 916,

3   169 P.3d 1 (2007) (en banc).

4   Flores admits that he can speak, read, and write English, and that family members

5   assisted him with his insurance claim. Aside from his declaration, Flores offers no other evidence

6   that MetLife refused to provide a Spanish-speaking representative, or that any

7   miscommunication with MetLife actually occurred. Plaintiff's own self-serving statements,

8   conclusions, and opinions are insufficient to defeat a summary judgment motion. *See Coverdell*

9   *v. Dep't of Soc. and Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987). There is no evidence that

10  MetLife denied Flores access to a Spanish-speaking employee or otherwise frustrated his claim.

11  MetLife's Motion for Summary Judgment on the bad faith claim is GRANTED and this claim is

12  DISMSSED with prejudice.

13  **D.  MetLife did not violate the Washington Consumer Protection Act as a matter of law.**

14  Flores also argues MetLife's alleged breach of contract and bad faith are *per se* violations

15  of the CPA. To prevail on a CPA claim, a Plaintiff must establish (1) an unfair or deceptive act

16  or practice; (2) occurring in trade or commerce; (3) impacting public interest; (4) injuring

17  plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training Stables,*

18  *Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780, 719 P.2d 531 (1986) (en banc).

19  Flores fails to establish that MetLife breached the policy or engaged in bad faith. He has

20  not shown any unfair or deceptive act or practice. Nor can Flores establish causation—he

21  concedes that Galvan stole the money, and that the theft caused the delay and the shortfall.

22  MetLife's Motion for Summary Judgment on Flores' CPA claim is GRANTED and that claim is

23  DISMISSED with prejudice.

24

**III. CONCLUSION**

   While the Court sympathizes with Mr. Flores' regrettable situation, MetLife is not responsible for it as a matter of law. MetLife did not breach the insurance policy, nor did MetLife act in bad faith or violate the CPA. Accordingly, the Defendant's Motion for Summary Judgment is **GRANTED** and all of Flores' claims against MetLife are DISMISSED with prejudice.

   IT IS SO ORDERED.

   Dated this 6th day of November, 2015.

Ronald B. Leighton
United States District Judge